THOMAS WARREN, Respondent, v. HENRY MAYER et al., Appellants.

St. Louis Court of Appeals. Argued and Submitted January 10, 1912. Opinion Filed February 6, 1912.

1. APPELLATE PRACTICE: Abstract in Equity Case: Failure to Set Out All the Evidence. In an equity case, the failure of the appellant to set out all the evidence in the abstract of the record filed in the appellate court is ground for a dismissal of the appeal or an affirmance of the judgment; but the omission of immaterial evidence not affecting the result will not result in such action being taken.

2. CORPORATIONS: Preference of Creditors: Insolvent and Dissolved Corporations. The rule that a corporation, even though in failing circumstances may prefer one creditor over another applies only to a going concern, and does not apply to a dissolved or insolvent corporation which is winding up its affairs and has gone, or is about to go, out of business.

3. ——: ——: ——: Liability of Stockholders Receiving Preference: Facts Stated. A payment of the proceeds of the assets of a corporation was made to stockholders, either for the purpose of paying a dividend previously declared, or by virtue of their stockholdings. The payment was authorized by three directors, two of whom received the benefit thereof, and was made in the process of winding up the corporation, which was insolvent. A creditor of the corporation, on an account due before the sale of the assets, obtained a judgment against the corporation. Held, that the two directors receiving payment of the proceeds were liable to the judgment creditor.

4. ——: ——: Unlawful Preference: Liability of Stockholders or Creditors Receiving. Where an unlawful preferential payment to a creditor is made by an insolvent corporation in the process of liquidation, the excess of the amount over what the creditor will receive under an equal pro rata distribution among all the creditors is recoverable for the benefit of the other creditors; but where, under such circumstances, a payment of corporate assets is made to a stockholder, he is liable to creditors for the whole sum received.

Appeal from St. Louis City Circuit Court.—*Hon. George C. Hitchcock,* Judge.

AFFIRMED.

*Julius T. Muench* for appellants.

(1) A dividend, properly declared, becomes, from the time of its declaration, an enforcible claim against the company, whether or not a specific fund is set aside out of which to pay it. McLaran v. Mill Co., 117 Mo. App. 40; Wheeler v. Sleigh Co., 39 Fed. 347; Beers v. Spring Co., 42 Conn. 17; Hill v. Newichawanick, 8 Hun (N. Y.) 459; Hopper v. Sage, 112 N. Y. 530; Bright v. Lord, 51 Ind. 272; Terry v. Lock Co., 47 Conn. 141; Hunt v. O'Shea, 69 N. H. 600; 2 Thompson on Priv. Corp., sec. 2134; 9 Am. & Eng. Ency. Law (2 Ed.), 689-690. (2) Dividends may be declared on uncollected accounts, supposed to be good, even though the corporation may be in debt. Slayden v. Coal Co., 25 Mo. App. 439. (3) A person or a corporation has the right to prefer one creditor over another. Crow

v. Beardsley, 68 Mo. 435; Shelley v. Boothe, 73 Mo. 74; Dougherty v. Cooper, 77 Mo. 528; Foster v. Planing Mill Co., 92 Mo. 79; Hargadine v. Henderson, 97 Mo. 375; Bank v. Bank, 136 U. S. 223; May v. Tenney, 148 U. S. 60; 2 Moravetz on Priv. Corp., sec. 786. (4) The Statute of Limitations does not extinguish a cause of action; it merely bars the remedy. Even then it must be specially pleaded. Gross v. Watts, 206 Mo. 397; Morgan v. Railroad, 51 Mo. App. 523; Bader v. Levee District, 110 Mo. App. 599; Stevenson v. Smith, 189 Mo. 447. (5) The transfer of the assets of the A. B. Mayer Manufacturing Company to the Mayer Fertilizer & Junk Company was made for an adequate and reasonable consideration. Warren v. Fert. & Junk Co., 145 Mo. App. 558.

*George B. Webster* for respondent.

(1) In equity cases where the appellant fails to present the entire evidence in his transcript or abstract in lieu thereof, this court will not review the chancellor's findings of fact. Mason v. Smith, 124 Mo. App. 596; McKinney v. Northcutt, 114 Mo. App. 146; Yancy v. Jones, 153 Mo. App. 206; Mitchell v. Mitchell, 191 Mo. 475. (2) The respondent does not dispute the appellants' first proposition of law contained in their brief, to the effect that a dividend when declared is an enforcible claim against the corporation declaring it, but adopts it, and applies it to the evidence in this case that the dividend which was the basis of the A. B. Mayer claim was declared more than twenty years before. That claim was therefore barred and could not have been considered a valid debt of the old company as against creditors. Ball v. Peper C. P. Co., 141 Mo. App. 26. (3) While it is generally true that a person or corporation, even while insolvent, may in good faith prefer one creditor over another, yet when a corporation is hopelessly insolvent and can not go on with its business, and these facts are

known to its officers and directors, then no attempted preference to them will be upheld. W. M. Co. v. Kampe, 38 Mo. App. 229; Shields v. Hobart, 172 Mo. 491; Roan v. Winn, 93 Mo. 503; State ex rel. v. Brockman, 39 Mo. App. 137. (4) The payment of the Mayer claim for dividends was a mere gift of the company's assets to the Mayer estate. Herman v. Britton, 88 Mo. 549; Gill v. Bales, 72 Mo. 424; Sladen v. Coal Co., 25 Mo. App. 439; Beyer v. Trust Co., 63 Mo. App. 525; Tube Works v. Ring Co., 118 Mo. 365. All persons receiving gifts from insolvent corporations are held to account to creditors for whatever they have so received. Roan v. Winn, 93 Mo. 503; Beyer v. Trust Co., 63 Mo. App. 525. (5) The dividend declared so many years before was never a valid obligation of that corporation. R. S. 1879, sec. 931; Shields v. Hobart, 172 Mo. 516; Slayden v. Coal Co., 25 Mo. App. 439.

REYNOLDS, P. J.—This is a suit, filed to the October term, 1907, of the circuit court of the city of St. Louis, against Henry Mayer, Morris Mayer and Frederick Mayer, as stockholders, officers and directors of the A. B. Mayer Manufacturing Company, for an accounting and to recover from them as individuals the amount of a judgment, together with costs and interest, in favor of plaintiff and against the A. B. Mayer Manufacturing Company. The petition, after averring the incorporation of the A. B. Mayer Manufacturing Company, and that it entered upon its business as a manufacturing corporation, avers that thereafter, on the 12th of April, 1897, that company became justly indebted to the plaintiff, on which indebtedness plaintiff, on the date last mentioned, brought action against the company; that afterwards, on the 12th of June, 1902, plaintiff recovered his judgment against the company in the sum of $765 for his debt and $157.55 for his costs in the suit expended and that that judgment thereafter remained and still is unpaid. It

is further averred that afterwards and on the 25th of July, 1902, the A. B. Mayer Manufacturing Company, by action of its board of directors, was duly dissolved; that at the time of the institution of the suit in which he recovered his judgment, namely, the 12th of April, 1897, the A. B. Mayer Manufacturing Company owned and was possessed of property and assets of great value, to-wit, of the value of $100,000, with which property and assets it was then carrying on business and was possessed of a large trade, but that while plaintiff's action was pending and in (March), 1901, the defendants, then being officers, directors and stockholders of the A. B. Mayer Manufacturing Company, caused all of the property and assets of the A. B. Mayer Manufacturing Company to be distributed among the stockholders of that company including these defendants and that no provision was made for the payment of the debts of the company. It is further charged that at the time the assets and property of the company passed into the hands of defendants, those assets were a trust fund for the payment of all debts and liabilities of the A. B. Mayer Manufacturing Company and when received and taken by defendants were charged with such liability, and that the defendants have appropriated to their own use those assets of the value before stated. Plaintiff demands and prays for an accounting of the assets received by defendants from the A. B. Mayer Manufacturing Company; that their value be found; that interest be computed upon his judgment and the aggregate amount of his debt, interest and costs due thereon to the date of the decree be ascertained, and that the defendants be decreed to pay the same to plaintiff with interest to the date of the decree and all costs of the proceeding. Defendants answered by general denial.

The cause came on for hearing before the court as a cause in equity and resulted in a judgment for plaintiff against the defendants Henry and Morris

Mayer for $1367.37, apportioned equally between them, that is, to be satisfied by the payment of $683.68 by each, the court finding in favor of the defendant Frederick C. Mayer and rendering its decree accordingly. A motion for a new trial having been filed, overruled and exceptions saved, the cause has been duly appealed to this court by the defendants Henry and Morris Mayer.

Counsel for respondent complains that the abstract prepared by the counsel for appellants does not set out all the evidence in the case and supplements it by what, as we understand, is the omitted part. Examining that we cannot say that it is of sufficient materiality or importance to have affected the result, one way or the other, and as we are satisfied we have practically all the testimony before us, we decline to dismiss the appeal, or affirm, as we might do, for reason of an incomplete setting out of all the evidence in the case, it being a suit in equity.

All the facts leading up to the transfer of the assets of the A. B. Mayer Manufacturing Company to the Mayer Fertilizer & Junk Company are so fully set out in Warren v. Mayer Fertilizer & Junk Co., 145 Mo. App. 558, 122 S. W. 1087, and were substantially in evidence in the trial of this case, so that we do not consider it necessary to repeat them, referring to the report of that case for those facts. Accepting what was held in that case as to the *bona fides* of the transaction as between the two companies, and that the remedy, if any, was against the officers, directors and stockholders of the A. B. Mayer Manufacturing Company, plaintiff brought this suit.

In rendering judgment the learned trial court handed down a memorandum giving his view of the case. Reciting the facts substantially as in the former case, and taking up the dealings with the fund of $12,000, the proceeds of the sale, by the executrix of the A. B. Mayer estate, to whom the court found that

it was turned over by the A. B. Mayer Manufacturing
Company, the learned trial judge finds that these pro-
ceeds were subject to distribution among the stockhold-
ers, only after the payment of the company's debts,
and would pay twenty-four dollars per share if so dis-
tributed among the stockholders on the outstanding
stock of that company; that at the time this $12,000
was received by the A. B. Mayer Manufacturing Com-
pany there were two claims against it, namely (1) that
of A. B. Mayer for dividends, "which the company
never had the means to pay," according to the min-
utes of the directors' meeting of February 9, 1901, and
which minutes were signed by these defendants; (2)
the claim of this plaintiff which was then in litigation
and subsequently became a judgment on June 11, 1902.
The learned trial judge then proceeds: "In this sit-
uation the $12,000 above mentioned was applied on
account of the (dividend) claim of A. B. Mayer, at
least it would so appear from the order of distribution
in the final settlement of the estate of A. B. Mayer,
although it is not at all clear from other evidence in
the case whether this was really done or whether it
was paid on account of the respective holdings of stock.
The stockholders were all in the same family and it
made little difference to them whether they received
the money as stockholders, or as legatees under the
will of A. B. Mayer, if the money was applied to the
payment of his claim. If the claim was paid, then the
stock would be worthless, and if the claim was worth-
less, then the stock would have some value. If the
$12,000 was applied in payment of the claim and such
claim should subsequently be held valid, then any other
creditor of the company should have to go unpaid. If,
on the other hand, the $12,000 was distributed accord-
ing to the holdings of the several shareholders, such
stockholders would be liable pro rata for the amount
they so received to any creditor of the company. It
was to the interest of the stockholders for it to appear

that the $12,000 was applied on the claim of A. B.
Mayer rather than on the stock and doubtless they
knew it at the time. The $12,000—part of the pro-
ceeds from the sale of the assets of the A. B. Mayer
Manufacturing Company—was accordingly paid to the
executrix of the estate of A. B. Mayer, who applied it
on the stock dividend claim, making the stock in the
company held by the estate apparently worthless.
Part of this $12,000 was subsequently paid to two of
these defendants, Henry and Morris Mayer, as leg-
atees under the will of A. B. Mayer, each receiving
$1086.29." The court further finds that in applying
this $12,000 on account of the claim of A. B. Mayer the
defendants were not guilty of actual fraud, as plaintiff
was not then a judgment creditor of the company and
might never become so, "and in that event there would
be no one to question the payment on the claim of A. B.
Mayer. If, however, plaintiff should become a (judg-
ment) creditor of the company, he could raise the ques-
tion of the validity of such payment as against him."
The court then states that the question before it is,
plaintiff having recovered his judgment (on an ac-
count due him before the sale of the assets), whether
he is entitled to recover against these defendants,
stockholders and directors of the A. B. Mayer Manu-
facturing Company when the transaction occurred,
"on the theory that the money received by them and
the other stockholders should have been first applied or
reserved by the company for the payment of his claim.
In the opinion of the court the plaintiff is entitled to
recover and it is immaterial whether the $12,000 was
paid on account of the claim of A. B. Mayer, as would
appear from the final settlement in said estate in the
probate court, or whether the said $12,000 was dis-
tributed according to the stock held by the several
stockholders, as much of the evidence tends to show.
If the former is true, plaintiff is entitled to recover
because plaintiff's claim is based on a judgment

against the company while the claim of A. B. Mayer which was paid was for dividends 'which the company never had the means to pay,' according to these defendants, who were directors of the company—in other words, the claim of A. B. Mayer is not a valid one as against this plaintiff, in the opinion of the court. If the latter is true, then plaintiff is entitled to recover under the well-known rule of law that the assets of a company on distribution are held by stockholders subject to the claims of creditors." Finding that the amount and value of the assets sold and so turned over to the executrix was $12,000, that of this, Henry and Morris Mayer had received respectively $1086.29 and Frederick Mayer had received nothing, the court rendered judgment as before stated.

Counsel for appellants make five points for reversal. First, that a dividend, properly declared, becomes, from the time of its declaration, an enforcible claim against the company, whether or not a specific fund is set aside out of which to pay it. Second, dividends may be declared on uncollected accounts, supposed to be good, even though the corporation may be in debt. Third, a person or corporation has the right to prefer one creditor over another. Fourth, the Statute of Limitations does not extinguish a cause of action; it merely bars the remedy. Even then it must be specially pleaded. Fifth, and finally, the transfer of the assets of the A. B. Mayer Manufacturing Company to the Mayer Fertilizer & Junk Company was made for an adequate and reasonable consideration, citing in support of this last proposition Warren v. Mayer Fertilizer & Junk Co., supra. This last proposition is not disputed.

Answering the contention of counsel for appellants, that the payment of the $12,000 by the A. B. Mayer Manufacturing Company to A. B. Mayer's executrix, had been made on account of a dividend declared some twenty years prior to the dissolution of

the A. B. Mayer Manufacturing Company, counsel for respondent invoked the Statute of Limitations as against that debt and also claimed that at the time the dividend was declared the A. B. Mayer Manufacturing Company was insolvent and not in position to declare a dividend. In the view we take of the case it is not necessary to consider or determine either of these points, nor the contention of counsel for appellants as to them and we express no opinion on either.

We agree with the learned trial court in holding that, speaking generally, it is immaterial whether the $12,000 was turned over by the A. B. Mayer Manufacturing Company to the estate of A. B. Mayer, who had died before the dissolution of the company, in payment of the amount due him on account of the alleged dividend, or was turned over to that estate on account of the stockholdings of A. B. Mayer in the company. In either event and on either theory the two defendants, appellants here, received out of that fund the respective amounts found by the trial court, and in either event it was an unlawful preference or payment under the facts in evidence as to the then situation of the A. B. Mayer Manufacturing Company. Whether the fund of which they received part, came from the payment to the Mayer estate on account of its stockholdings or on account of its position as a creditor to whom the alleged dividend was paid, these appellants received the benefit of the payment. At the time appellants voted to turn over this $12,000, they constituted a majority of the directors in the A. B. Mayer Manufacturing Company; they used their official positions for their own benefit, and when, as directors, they assented to the turning over of the whole fund realized on the sale of all the assets to the Mayer estate, they were acting in their own interests.

We may concede that the transfer of all of its assets by the A. B. Mayer Manufacturing Company to the Mayer Fertilizer & Junk Company, was made

for an adequate and reasonable consideration. We may also concede that a person or a corporation, even if in failing circumstances financially, has the right to prefer one creditor over another. This is the settled law of this state, as see Union Bank of Chicago v. Kansas City Bank, 136 U. S. 223, l. c. 234, and cases there cited; also, Foster v. Mullanphy Planing Mill Co., 92 Mo. 79, l. c. 87. But the law is clear and well settled, not only in this state but elsewhere, that while that rule applies in cases of a going concern, it does not apply to a dissolved, an insolvent corporation, to a corporation winding up its affairs and about to go, or gone, out of business, as was the case here. Counsel for appellants relies, in support of his proposition, among other authorities, on Foster v. Mullanphy Planing Mill Co., supra. In that case, at page 87, it is held that a corporation, "within the scope of the purposes for which it was incorporated," may do any act in furtherance of those purposes which an individual in similar circumstances might do, and although insolvent, may prefer some creditors to others, even though such creditors are among the directors of the corporation, for it is said, "that the insolvency does not *per se* abrogate its power to continue the management of its assets, but that it may continue in its due course of business, so long as there is a fair and honest prospect of redeeming its fortunes, and may pay off debts in regular course of business, though a part of the creditors are thereby deprived of their security. [2 Morawetz on Priv. Corp. (2 Ed.), sec. 786, and cases cited.]" This applies the rule to a person or corporation continuing in business; making the shifts and provisions ordinarily necessary for one in an embarrassed financial condition to continue in and keep up its business, to go on. In the case at bar the A. B. Mayer Manufacturing Company was not only insolvent but was not making this preferential payment in the usual course of its business as a going concern. It made it in view

of its entire cessation of business, in view of going entirely out of business. Hence the rule announced in the cases referred to, of the right of an insolvent corporation to make preferences among its creditors, does not here apply.

In the case of Shields v. Hobart, 172 Mo. 491, 72 S. W. 669, our Supreme Court (1. c. 517) distinctly recognizes the broad doctrine announced by Mr. Justice Story in Wood v. Dummer, 3 Mason 308, l. c. 311, that on the dissolution of a corporation the assets of a corporation in the hands of its directors constitute a trust fund which may be followed by the creditors into the hands of any persons having notice of the trust attaching to it. "If the capital stock is a trust fund," says Mr. Justice Story in that case (1. c. 312), "then it may be followed by the creditors into the hands of any persons, having notice of the trust attaching to it. As to the stockholders themselves, there can be no pretense to say, that, 'both in law and fact, they are not affected with the most ample notice.'" That is the rule followed elsewhere. Notice being applicable to stockholders, it is, if possible, more so to directors. While the application of this rule to a going concern has been denied, it has always been followed by our courts in cases of dissolved corporations, of corporations out of, or about to go out of, business. [See Roan v. Winn, 93 Mo. 503, 1. c. 510, 4 S. W. 736; Kankakee Woolen Mill Co. v. Kampe, 38 Mo. App. 229, l. c. 232-234; State ex rel. Moll v. Brockman, 39 Mo. App. 131.]

Mr. Morawetz, in his treatise on the Law of Private Corporations (2 Ed.), par. 787, and following, announces as settled law that a corporation which has voluntarily ceased to carry on business, or whose right to use the corporate fund for business purposes has expired, continues to hold its assets subject to the equitable claims of its creditors, and while the legal ownership of the assets of a corporation is not al-

tered by the company's insolvency and the regular agents of the company still have the power to represent it and manage its property for all legal purposes, the equitable interests of the shareholders and creditors are altered by the insolvency, ''and the directors or managing agents who originally stood in a fiduciary relation to the company, become placed in a fiduciary relation to its creditors. The powers of management vested in the directors of an insolvent corporation which has ceased to carry on business, are solely powers to manage the assets in trust for its creditors and for their benefit.'' It is further stated by this same author in the same section, that ''Directors of an insolvent corporation who have claims against the company as creditors must share ratably with the other creditors in a distribution of the company's assets. They cannot secure to themselves any advantage or preference over other creditors, by using their powers as directors for that purpose. These powers are held by them in trust for all the creditors, and cannot be used for their own benefit.''

Careful reading of the cases cited by the learned counsel for appellants and claimed by him to be contrary to this rule, fails to support that counsel's contention. They are cases in which the preference was made ''in the ordinary course of business,'' so far as the corporations are concerned. The case of Shields v. Hobart, supra, is distinctly placed on this ground and is the last and hence the controlling decision. Applying this rule, whether this payment of all the proceeds of the assets of the A. B. Mayer Manufacturing Company was made in settlement of the claim of A. B. Mayer on the dividend before then declared, or whether it was paid by virtue of his stockholdings in the company, in either event it was paid by the order and on the authority of all three of the directors, these two who received the benefit of the payment being a majority of the board; the payment not made in the or-

dinary course of business of the company but made in winding up the affairs and business of a concededly insolvent company and at the close or contemplated close of its corporate existence. Under this state of facts we have no question whatever as to the correctness of the conclusion arrived at by the learned trial judge in this case.

We are not unmindful of a distinction that does exist between a preferential payment to a creditor and payment or distribution of the fund among the stockholders. In the latter case the whole payment may be recovered; in the former only the excess of the amount over what would have been an equal pro rata distribution among all creditors holding enforcible claims. No point was made in the trial court and none is made here as to this judgment being excessive as against appellants if they received the money as creditors, and we do not consider or pass upon it. Moreover, the learned trial court found as a fact that the evidence tended to show that it was paid to the executrix as on account of the stock, and not as on account of the dividend claim, in which case the defendants, as stockholders, were liable for the whole sum received by them.

The judgment of the circuit court is affirmed. *Nortoni* and *Caulfield, JJ.*, concur.